IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL PHILLIPS, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION NO. 22-1889 |
| PENSKE TRUCK LEASING CO., L.P., | : |
| Defendant. | : |

## MEMORANDUM OPINION

**SCHMEHL, J.** /s/ JLS                                                                                              March 21, 2023

Plaintiff Michael Phillips works as a mechanic for Defendant Penske Truck Leasing Co., and on certain days, Plaintiff must be on-call to assist Defendant's drivers or customers by "provid[ing] roadside assistance or diagnos[ing] mechanical problems over the phone." (Am. Compl. ¶¶ 14–15, ECF No. 24.) Plaintiff alleges that although "mechanics generally receive payroll credit and compensation for time associated with such on-site work," Plaintiff (and other mechanics) "do not receive any payroll credit for their work" that they complete entirely over the phone (*i.e.*, without an on-site visit). (*Id.* ¶¶ 16–17.) Based on these allegations, Plaintiff has brought a putative collective action under the Fair Labor Standards Act ("FLSA") concerning unpaid wages for this telephonic work.

Plaintiff resides in Longview, Texas. (*Id.* ¶ 4.) Additional mechanics from various other states have filed consents to join this action as opt-in plaintiffs (*see* ECF Nos. 16–18, 23, 30–32), though the Court has not yet "certified" the action. Defendant is incorporated in Delaware and maintains its headquarters in Reading, Pennsylvania. (Am. Compl. ¶¶ 6, 10; Answer ¶ 6, ECF No. 29.) Defendant seeks to have this case transferred to the Eastern District of Texas because,

among other things, most (if not all) of the witnesses and evidence relating to Plaintiff's employment are found there.  (Def.'s Br. 1, 6–8, ECF No. 21-1.)  Plaintiff opposes a transfer because, under developing case law, a Texas court may lack jurisdiction over many or all of the opt-in plaintiffs. (Pl.'s Br. 4–5, ECF No. 25.)  At the present stage of this case, judicial economy and the interest of justice favor keeping the lawsuit before this Court.  If the Court ultimately declines to "certify" this collective action such that only Plaintiff's claims will proceed, the venue calculus may change.  Accordingly, Defendant's Motion is denied without prejudice.

I. **PRELIMINARY ISSUES RAISED BY THE THIRD CIRCUIT'S DECISION IN *FISCHER V. FED. EXPRESS CORP.***

Before reaching the core venue analysis, the Court must discuss developing case law concerning FLSA collective actions.  In mid-2022, the Third Circuit held that "opt-in plaintiffs in FLSA collective actions must satisfy the personal jurisdiction requirements of the Fourteenth Amendment to join the suit."  *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 387 (3d Cir. 2022). For nationwide collective actions in particular, opt-in plaintiffs will most easily satisfy this requirement if the lead plaintiff brings the action "in a court that can exercise general personal jurisdiction over their employer." *Id.* at 388.  Absent general personal jurisdiction, however, opt-in plaintiffs must each satisfy an individualized specific personal jurisdiction analysis.  *Id.* at 383–84.  If opt-in plaintiffs fail this analysis as well, their claims must be transferred or dismissed.

*Fischer* binds courts in the Third Circuit, and the Sixth and Eighth Circuits have reached a similar conclusion. *See Canaday v. The Anthem Companies, Inc.*, 9 F.4th 392 (6th Cir. 2021); *Vallone v. CJS Solutions Group, LLC*, 9 F.4th 861 (8th Cir. 2021).  Other courts disagree.  *See Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84 (1st Cir. 2022); *Swamy v. Title Source, Inc.*, 2017 WL 5196780 (N.D. Cal. Nov. 10, 2017).  To date, the U.S. Supreme Court has denied writs of certiorari to resolve this split.  The parties have not identified the position, if any, taken by the

Fifth Circuit, which would govern Plaintiff's claims if this Court were to transfer the case to the Eastern District of Texas.  This Court has not found relevant cases from that district, but other Texas courts have issued decisions similar to *Fischer*.  *See, e.g.*, *Martinez v. Tyson Foods, Inc.*, 533 F. Supp. 3d 386, 391–92 (N.D. Tex. 2021) (requiring a separate showing of personal jurisdiction over the defendant for each out-of-state opt-in plaintiff); *Loebsack v. Dufresne Spencer Grp., LLC*, 2022 WL 2959718 (S.D. Tex. July 11, 2022) (jurisdictional questions raised by circuit split support denial of certification), *report and recommendation adopted*, 2022 WL 2954334 (S.D. Tex. July 26, 2022).

General personal jurisdiction over Defendant may be lacking in the Eastern District of Texas.[1]  Accordingly, if this case were transferred there and the Fifth Circuit were to adopt the *Fischer* rule, the opt-in plaintiffs would each need to satisfy a specific personal jurisdiction analysis—likely resulting in the dismissal or transfer of most or all of those plaintiffs.  General personal jurisdiction before this Court, however, is certain since Defendant maintains its headquarters here.  Plaintiff, by filing in the Eastern District of Pennsylvania, may simply have sought to preserve his ability to bring a nationwide collective action against a Pennsylvania employer while complying with the requirements of *Fischer*.

The venue transfer statute permits this Court to transfer a case "[f]or the convenience of parties and witnesses" and "in the interest of justice."  28 U.S.C. § 1404(a).  The interest of justice here requires denial of Defendant's Motion:  Plaintiff has a right to bring a nationwide collective action, Plaintiff potentially cannot do so in the Eastern District of Texas, and Plaintiff has complied with *Fischer* and similar cases by filing in the district in which Defendant maintains its

---

[1]     This Court, of course, makes no formal finding concerning the Eastern District of Texas's jurisdiction over Defendant.

headquarters. If this case develops into a "certified" collective action with opt-in plaintiffs from across the country—as it has already begun to do—convenience will also warrant keeping the case before this Court, again because Defendant has its headquarters here.[2]

Further, it is not in the interest of justice for employers to weaponize *Fischer* through venue challenges. The rule from that case requires lead plaintiffs in most nationwide collective actions to sue their employer in a district in which the employer is either incorporated or headquartered.

---

[2]   Certain case law counsels that when a court has not yet "certified" a putative collective action, "[t]he convenience of potential opt-in plaintiffs, regardless of their relative locations, is merely hypothetical"; instead, "only allegations from the *named parties* in a putative collective action under the FLSA, much like a class action under Fed.R.Civ.P. 23, are relevant in assessing venue." *McKee v. PetSmart, Inc.*, 2013 WL 1163770, at *4 (D. Del. Mar. 20, 2013), *report and recommendation adopted*, 2013 WL 2456719 (D. Del. June 5, 2013); *see also Newhall v. Chase Home Fin. LLC*, 2010 WL 4387517, at *3 (D.N.J. Oct. 28, 2010) (gathering authorities). But FLSA opt-in plaintiffs *are* equivalent to named parties *as soon as they opt in*. The *Fischer* court explained that "certification" in the FLSA context is a "misnomer," because it does not create "an independent legal entity" as in a Rule 23 class action—instead, it merely results in the distribution of court-approved written notices to other potential opt-ins. 42 F.4th at 376. To the Third Circuit, this is a "critical distinction." *Id.* The opt-in notice alone—not the "certification"—adds an employee as a named party in the case.

FLSA opt-in plaintiffs, having "become[] a 'party plaintiff,'" therefore "should have the same status in relation to the claims of the lawsuit as do the named plaintiffs." *Id.* at 377 (first quoting 29 U.S.C. § 216(b), and then quoting *Prickett v. DeKalb Cnty.*, 349 F.3d 1294, 1297 (11th Cir. 2003)); *see also Martinez*, 533 F. Supp. 3d at 392 (pursuant to the FLSA provision authorizing collective actions, "every plaintiff who opts in to a collective action has party status"; in other words, that provision "does not truly authorize a class action: it is properly viewed as a rule of joinder under which only the individual opt-in plaintiffs have legal status, not the aggregate class of aggrieved employees" (first quoting *Greinstein v. Fieldcore Servs. Sols., LLC*, 2020 WL 6821005, at *4 (N.D. Tex. Nov. 20, 2020), and then quoting *Roy v. FedEx Ground Package Sys., Inc.*, 353 F. Supp. 3d 43, 59 (D. Mass. 2018))). Accordingly, this Court does not find it improper to consider the interests of not just lead Plaintiff Phillips but also those additional parties that have already opted into this case, even prior to the case's "certification."

Defendant argues that notwithstanding the opt-in plaintiffs' named-party status, this Court has not yet vetted their claims to confirm that they are indeed sufficiently similar to those of lead Plaintiff Phillips. (Def.'s Reply 5, ECF No. 26.) This point is well-taken, which is why the Court will deny Defendant's Motion without prejudice. Should the Court decline to "certify" this action, Defendant may raise its Motion again.

Here, Defendant argues that this Court should transfer an out-of-state lead plaintiff's claims to a district that may lack general personal jurisdiction. If that court were to adopt a rule similar to that of *Fischer*, transfer would neuter the collective action. Combining that venue ruling with *Fischer*, then, the only way an employer could be subject to a nationwide collective action is if there happens to be a lead plaintiff for whom the venue analysis would *not* warrant transfer outside of the district(s) having general personal jurisdiction over the employer. Usually, that would entail finding a lead plaintiff residing in (1) a district in the employer's state of incorporation, (2) the district in which the employer maintains headquarters, or (3) a district close to one of those prior two districts, such that transferring the case to the lead plaintiff's home district would yield minimal additional convenience to the parties. There may not always be a lead plaintiff fitting that profile. In that case, the FLSA's collective action mechanism would be thwarted. *Cf. Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) ("Congress has stated its policy that" plaintiffs bringing claims under the ADEA, which incorporates the FLSA collective action provision, "should have the opportunity to proceed collectively. A collective action allows age discrimination plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity.").

With these *Fischer*-specific considerations in mind, the Court turns to the traditional venue transfer factors.

## II. VENUE ANALYSIS

Defendant, as the moving party, bears the burden of establishing that the Court should transfer this action. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Defendant maintains its headquarters in Reading, Pennsylvania, rendering venue proper in this Court. 28 U.S.C. § 1391(b)(1), (c)(2). Since venue is proper here, section 1404(a) governs any potential

transfer. As a threshold matter, that provision permits transfer of this action only to a "district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). Venue and jurisdiction in the Eastern District of Texas appear to be proper, at least as to lead Plaintiff Phillips in particular. But Plaintiff argues that the possible preclusion of non-Texas opt-in plaintiffs means that he cannot bring his suit in the transferee district—at least not in a meaningful sense.

The parties have not pointed the Court to any directly relevant authority. Outside of the FLSA opt-in context, courts have confronted a similar issue of transferring a case in which the transferee court has jurisdiction over some, but not all, of the defendants. In that case, courts may sever the problematic defendants, retain their portion of the action, and transfer the other defendants to the transferee forum. *Sunbelt Corp. v. Noble, Denton & Assocs., Inc.*, 5 F.3d 28, 33 (3d Cir. 1993). This willingness to facilitate transfer by severing problematic parties, together with the *Fischer* court's repeated reference to the "essentially individual character" of FLSA opt-in plaintiffs, 42 F.4th at 377, suggests that the threshold requirement of section 1404(a) may be satisfied even if only lead Plaintiff Phillips could bring his claims in the Eastern District of Texas.

As its name suggests, the threshold requirement is not the end of the Court's inquiry. After finding that Plaintiff could have brought his claims in the transferee court, the Court must now consider certain "private" and "public" factors in deciding whether to retain or transfer the case. *See Jumara*, 55 F.3d at 878–79. The six private factors are: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) where the claim arose; (4) the convenience of the parties given their relative physical and financial condition; (5) the convenience of the witnesses to the extent they may be unavailable for trial in a given forum; and (6) the location of books and records to the extent they could not be produced in the alternative forum. *Id.* at 879. The six public factors are: (1) the enforceability of the judgment; (2) practical considerations of trial logistics; (3) the relative court congestion of the two fora; (4) the local interests of each forum in deciding local

controversies; (5) the public policies of the fora; and (6) the judges' relative familiarity with the applicable law. *Id.* at 879–80. For the following reasons, both sets of factors, on balance, favor keeping all claims—both of lead Plaintiff Phillips and the opt-in plaintiffs—before this Court.

### A. Private Factors

Plaintiff concedes (Pl.'s Br. 5) that, in general, courts afford less weight to a plaintiff's chosen forum if that forum is neither his home nor the location of the alleged events. *See, e.g.*, *Reed v. Weeks Marine, Inc.*, 166 F. Supp. 2d 1052, 1057 (E.D. Pa. 2001). As discussed above, however, there are other opt-in plaintiffs to consider, and these opt-in plaintiffs hale from across the country. The common thread between these claims is Defendant's alleged compensation practices, which may even have been established at Defendant's headquarters here. In any event, it is certainly not the case that the operative facts for *all* named plaintiffs in this action—*i.e.*, lead Plaintiff Phillips *and* the opt-in plaintiffs—occurred in the Eastern District of Texas. *See Stewart v. First Student, Inc.*, 2022 WL 16731231, at *3 (E.D. Pa. Nov. 7, 2022) ("Here, the claim would have arisen either in the dozens of states where Plaintiffs" and opt-in plaintiffs "allegedly worked overtime without pay, or in the Southern District of Ohio, where Defendant is headquartered and would have established and maintained policies and practices violative of FLSA."). Accordingly, the Court finds that the first three private factors—plaintiff's choice of forum, defendant's choice of forum, and where the claim arose—favor proceeding before this Court.

The financial positions of the parties also warrant denying Defendant's Motion. Defendant, a large corporation operating nationwide, clearly has the resources to litigate in its home forum. And the FLSA provides a degree of financial parity precisely by authorizing plaintiffs to pool resources and mitigate costs through bringing a collective action in the same forum. *See Hoffmann-La Roche*, 493 U.S. at 170.

The final two factors are neutral. The parties agree that the ease of producing documents in today's digital environment neutralizes that factor. More challenging are Defendant's concerns about the Court's limited ability to compel compliance with subpoenas to non-party witnesses from across the country. (Def.'s Br. 7 (citing (Fed. R. Civ. P. 45(c).) But transfer to the Eastern District of Texas would not alleviate this concern for those non-Texas opt-in plaintiffs that can establish personal jurisdiction over Defendant there. Further, although key witnesses may include far-flung supervisors and colleagues of Plaintiff and the opt-in plaintiffs, as a practical matter, Defendant has the ability to compel its own employees to participate in this case. *See, e.g.*, *Monster Energy Co. v. Metro Giant, Inc.*, 2021 WL 3524125, at *10 (C.D. Cal. Apr. 9, 2021) ("[T]he Court believes that requiring a court's subpoena power for Defendants' . . . own employees is unlikely."). Defendant raises the specter of non-party witnesses no longer employed by Defendant (Def.'s Br. 7) but provides no concrete examples. Considering all of the foregoing factors on balance, the private factors favor retaining the case in this Court.

    **B.**    **Public Factors**

Many of the public factors are mixed. As to the first, fifth, and sixth factors, because a federal statute is at issue here, the parties have not suggested that the enforceability of a judgment, the public policies of the fora, and the judges' relative familiarity with the applicable law are anything but neutral factors. *See Stewart*, 2022 WL 16731231, at *4. The third factor—relative court congestion—is likewise indeterminate. Defendant provides statistics showing that the median time from filing to trial is shorter in the Eastern District of Texas, and this district has more pending filings and cases; that said, this district has fewer such filings and cases on a per-judge basis. (Def.'s Br. 9.)

The remaining factors favor retaining this case. For many of the reasons provided earlier, practical considerations counsel aggregating the various employees' claims here, before one court.

Although opt-in plaintiffs may have to travel from across the country, there is no more sensible or efficient forum in which to litigate a nationwide collective action than the employer's own home district. Further, Philadelphia is a major city with access through both airports and train stations. And the fourth factor, which considers the local interests in deciding this case, also favors this district. Every plaintiff's home forum has an interest in adjudicating its residents' claims, but this forum too has an interest in regulating the nationwide conduct of a company that has headquartered itself here. *Garcia-Alvarez v. Fogo de Chao Churrascaria (Pittsburgh) LLC*, 2021 WL 396741, at *3 (W.D. Pa. Feb. 4, 2021) ("[T]he nationwide scope of Plaintiff's claims indicates that the forum with the greatest local interest is" the one "where Defendants are headquartered[].""). Accordingly, the public factors, taken together, warrant keeping the case before this Court.

### III.   CONCLUSION

For the foregoing reasons, Defendant's Motion is denied without prejudice. A corresponding order accompanies this memorandum.